UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANYELL SANDLIN,

                                      Plaintiff,

                                                                                 DECISION AND ORDER

                                                                                 04-CV-6065L

                v.

SUPERINTENDENT THOMAS M. POOLE,
et al.,

                                      Defendants.
_____

Plaintiff, Danyell Sandlin, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS") alleges that defendants, all of whom were at all relevant times employed by DOCS, violated his constitutional rights in a number of respects during 2002, while plaintiff was housed at Five Points Correctional Facility. Defendants have moved for summary judgment.

**DISCUSSION**

**I. Failure to Exhaust**

Defendants contend that with respect to all but one of plaintiff's claims–a claim alleging denial of proper medical treatment against defendants Furnia, Elizabeth Costello and Trudy Thornton–plaintiff has failed to exhaust his administrative remedies as required by the Prison

Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  The PLRA provides in part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.*

There are three stages to the DOCS grievance process, all three of which must usually be followed to satisfy the PLRA's exhaustion requirement.  "First, a grievance is filed with the Inmate Grievance Resolution Committee ('IGRC').  Next, an inmate may appeal an adverse decision to the prison superintendent.  Finally, an inmate may appeal the superintendent's decision to the Central Office Review Committee ('CORC')." *Brownell v. Krom*, 446 F.3d 305, 309 (2d Cir. 2006).

Defendants have identified six grievances that plaintiff filed during the time in which the events giving rise to this lawsuit occurred.  Defendants state that each of those grievances was denied, but that plaintiff appealed only one of them to CORC.  That was a grievance that plaintiff filed on August 29, 2002, alleging that Furnia, Costello and Thornton denied him adequate medical care.  CORC affirmed the denial of that grievance on November 20, 2002.  *See* Dkt. #51 Ex. F.

In response to defendants' motion, plaintiff asserts that he attempted to appeal each of his grievances to CORC, but that he was "impeded obstructed hindered; opposed; precluded and inhibited by the acts and conduct of Correctional Officers and Officials some of whom are defendants of this lawsuit." Dkt. #57 at 10.  Specifically, plaintiff alleges that officials at Five Points did not provide grievance deposit boxes for inmates in the Special Housing Unit ("SHU"), where plaintiff was confined during the time in question, in contravention of state regulations.  *See* 7 N.Y.C.R.R. § 701.7(b).  He also alleges that the officers in SHU refused to accept inmates' grievance

and grievance appeal forms or to forward them to the appropriate office. Plaintiff alleges that he "complained ... many times to the area supervisor that officers were blocking his grievances appeals and correspondences," to no avail. *Id.*

Plaintiff alleges that because no deposit boxes were available, he was forced to have his grievance and appeal forms collected by ordinary facility mailing services, which meant that the officers whose job it was to collect the forms were often "the very officers against whom the grievances were made." *Id.* at 11. He contends that those officers would often either refuse to collect the forms in the first place, or, if they did take them, would fail to send them on to the grievance office.

In addition, plaintiff contends that officers and officials at Five Points denied him access to books or other reference materials that set forth and explained the DOCS grievance procedures. He also alleges that he was denied grievance forms, again in violation of state regulations, *see* 7 N.Y.C.R.R. § 701.7(a), as well as ordinary writing paper. *Id.* at 12.

Plaintiff further alleges that he was retaliated against for attempting to exercise his constitutional rights with respect to his grievances. He alleges that a number of his legal documents, some of which included copies of his grievances and related documents, were confiscated from him. He also contends that some of the actions complained of in the instant lawsuit were retaliatory, and were intended to dissuade him from pursuing his grievances.

In *Hemphill v. New York*, 380 F.3d 680 (2d Cir 2004), the Court of Appeals for the Second Circuit set forth a three-part test "in cases where a prisoner plaintiff plausibly seeks to counter

defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA":

> Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact available to the prisoner. The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements.

*Id.* at 686. Failure to exhaust is an affirmative defense, and it is defendants' burden to establish non-exhaustion. *Sease v. Phillips*, No. 06 CIV. 3663, 2008 WL 2901966, at *4 (S.D.N.Y. July 24, 2008); *Jackson v. Provost*, No. 996-CV-1864, 2008 WL 2405715, at *9 (N.D.N.Y. June 11, 2008); *Odom v. Dixion*, No. 04-CV-889, 2008 WL 466255, at *16 (W.D.N.Y. Feb. 15, 2008).

In the case at bar, I find that plaintiff has sufficiently alleged facts excusing his failure to appeal his grievances to CORC, and that defendants have failed to rebut those facts. Plaintiff has alleged a combination of circumstances–failure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals–which effectively rendered the grievance appeal process unavailable to him. Such facts would also support a finding that defendants are estopped from relying on the exhaustion defense, as well as "special circumstances" excusing plaintiff's failure to exhaust. *See*, *e.g.*, *Ziemba v. Wezner*, 366 F.3d 161, 162-63 (2d Cir. 2004) (district court erroneously failed to address prisoner's argument that defendants' actions, which included denying him grievance forms and writing implements, estopped

defendants from asserting exhaustion defense); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (district court erred in dismissing claim for failure to exhaust, without considering inmate's allegation that he was denied grievance forms); *Miller v. Norris*, 247 F.3d 736, 738-40 (8th Cir. 2001) (prisoner's allegation that state department of correction failed to respond to his request for grievance forms was sufficient to raise inference that he had exhausted his "available" remedies); *Barad v. Comstock*, No. 03-CV-736, 2005 WL 1579794, at *8 (W.D.N.Y. June 30, 2005) (DOCS employees' failure to pick up inmates' appeals papers can constitute "special circumstances" excusing failure to exhaust); *Feliciano v. Goord*, No. 97-CV-263, 1998 WL 436358, at *2 (S.D.N.Y. July 27, 1998) (denying motion to dismiss complaint for failure to exhaust, where inmate alleged that defendants refused to provide him with grievance forms).

Plaintiff has also alleged acts of retaliation against him for filing grievances. In that regard, I note that although plaintiff was clearly not dissuaded from making *any* attempts to file grievances or grievance appeals, "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill*, 380 F.3d at 688 (rejecting defendants' argument "that the fact that Hemphill sent a letter to Superintendent Artuz and filed this suit means that he was not–as a matter of law–sufficiently frightened as to render normal grievance procedures unavailable"). I conclude that plaintiff has presented sufficient evidence to show that the grievance process was effectively rendered unavailable to him, and that defendants are not entitled to summary judgment on exhaustion grounds.

**II. Eighth Amendment Claim against Furnia, Costello and Thornton**

Plaintiff alleges that defendants Furnia, Costello and Thornton, all of whom were registered nurses employed at Five Points, violated his rights under the Eighth Amendment by denying him adequate medical care. As stated, defendants concede that plaintiff has exhausted his administrative remedies with respect to this claim, and they move for summary judgment on the merits of this claim.

Plaintiff alleges a number of acts and omissions by these three defendants in support of this claim. He alleges, for example, that they confiscated his prescription medicines, refused to provide him with requested medication, refused to perform needed medical tests, and failed to follow up on sick calls to check on plaintiff's condition.

Even viewing the evidence in the light most favorable to plaintiff, I conclude that Furnia, Costello and Thornton are entitled to summary judgment. Plaintiff's allegations show no more than his own subjective dissatisfaction and disagreement with the treatment that he received.

To show that prison medical treatment was so inadequate as to amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, plaintiff must prove that defendants' actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995)). *See also Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could

result in further significant injury or the unnecessary and wanton infliction of pain'") (quoting *Chance*, 143 F.3d at 702).

As to the "deliberate indifference" component, the Supreme Court has explained that this standard includes both an objective and a subjective component. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). With respect to the objective aspect, the court must ask whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights. With respect to the subjective element, the court must consider whether the deprivation was brought about by defendants in wanton disregard of those rights. *Id.* To establish deliberate indifference, then, plaintiff must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain. *See id.* at 299; *Anderson v. Burge*, 539 F.Supp.2d 684, 687 (W.D.N.Y. 2008).

The Court in *Estelle* also cautioned that mere negligence is not actionable. A prisoner's complaint that a medical professional "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.* at 102, or "incompatible with the evolving standards of decency that mark the progress of a maturing society," *id.* at 105-06. It is clear, then, that allegations of negligence alone do not state a constitutional claim. *Id.* at 106 n. 14; *Chance*, 143 F.3d at 703-04.

Likewise, an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at

703; *see also Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion").

In the case at bar, that is all that plaintiff has shown: mere disagreement with his treatment. He has not stated with any specificity what actions Furnia, Costello and Thornton took or failed to take with respect to his medical treatment that violated his rights, and his allegations that they violated his right to adequate treatment are wholly conclusory. Moreover, plaintiff has failed to present evidence upon which a reasonable finder of fact could conclude that these defendants acted with a culpable state of mind. Plaintiff's claims against Furnia, Costello and Thornton are therefore dismissed.[1]

**III. Lack of Personal Involvement of Defendants Poole, Gregoire, Murphy and O'Connor**

To make out a claim against a particular defendant under § 1983, plaintiff must establish the defendant's personal involvement in the alleged constitutional deprivation. *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001); *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001). A supervisory official's personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the

---

[1] Furnia has apparently never been served and has not appeared in this action. Although strictly speaking it is therefore unnecessary for the Court to render a decision with respect to Furnia, the record demonstrates that there is no basis for a claim against Furnia. To avoid any unnecessary litigation of the claims asserted against Furnia, summary judgment is therefore entered in favor of Furnia as well.

continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

Applying these standards here, I find that plaintiff has failed to establish the personal involvement of defendants Poole, Gregoire, Murphy, and O'Connor. Although they are mentioned in the complaint, even a generous reading of the complaint makes clear that they had no involvement in the alleged violations of plaintiff's rights, under any of the means set forth above. These defendants may have had some supervisory authority during the period in question, but even if plaintiff's constitutional rights were violated, that is not enough to make them liable under § 1983.[2]

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #49) is granted in part and denied in part. Plaintiff's claims against defendants Furnia, Costello, Thornton, Poole, Gregoire, Murphy, and O'Connor are dismissed. In all other respects, defendants' motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       September 8, 2008.

---

[2]It appears that at all relevant times, Poole was the Superintendent of Five Points, Gregoire was a physician employed by DOCS, Murphy was the Acting Director of Special Housing and Inmate Discipline, and O'Connor was employed as Nurse Administrator. *See* Dkt. #30 ¶¶ 3, 13, 18.